
DA 06-0402

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 411

TOWN OF GERALDINE,

      Plaintiff and Appellant,

  v.

MONTANA MUNICIPAL INSURANCE AUTHORITY,

      Defendant and Appellee.

APPEAL FROM:     District Court of the Twelfth Judicial District,
                  In and For the County of Chouteau, Cause No. DV-2005-029
                  Honorable David G. Rice, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

           Ward E. Taleff, Taleff Law Office, P.C., Great Falls, Montana

      For Appellee:

           Curt Drake, Drake Law Firm, P.C., Helena, Montana

                      Submitted on Briefs:  November 6, 2008

                                    Decided:  December 9, 2008

Filed:

                                    Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1    The Town of Geraldine (the Town) appeals an Order of the District Court for the Twelfth Judicial District, Chouteau County, denying the Town's Motion for Partial Summary Judgment and granting the Motion for Summary Judgment of the Montana Municipal Insurance Authority (MMIA). We affirm.

¶2    The Town raises the following issue on appeal: Whether the District Court erred in holding that MMIA did not have a duty to defend and indemnify the Town in an underlying action.

## Factual and Procedural Background

¶3    On December 12, 2003, the Town entered into a contract with AK Drilling, Inc. (AK) for the construction of a well. Delta Engineering, P.C. (Delta) was the project engineer. In October 2004, AK brought an action against the Town and Delta alleging that the Town's Mayor instructed AK to perform work beyond the scope of the contract, and that the Mayor represented to AK that the Town would pay for this work. When the town refused to pay, AK filed suit alleging breach of contract against the Town; negligent misrepresentation and constructive fraud against both the Town and Delta; and breach of professional duty against Delta.

¶4    MMIA was created by the Montana League of Cities and Towns to provide member towns with loss protection. MMIA issued a policy of insurance to the Town covering the period from July 1, 2004, through January 1, 2005. The extent of protection MMIA provided to the Town is defined in its Memorandum of Liability Coverage, Forms A and B.

2

¶5 Following service of AK's Complaint, the Town notified MMIA of the suit and requested that MMIA provide both a defense and indemnification under the terms of the policy. On December 10, 2004, counsel for MMIA sent the Town a letter refusing to defend or provide coverage for the claims brought by AK citing policy exclusions for non-monetary damages, punitive damages, breach of contract, and liability based on estimated probable costs or faulty bid specifications.

¶6 Thereafter, the Town brought this action seeking a judgment that MMIA is obligated to defend and provide coverage for the claims brought against the Town by AK. The Town and MMIA filed cross-motions for summary judgment on the issues of duty to defend and indemnification. The District Court denied the Town's motion and granted MMIA's motion on the basis that MMIA did not have a duty to defend and indemnify the Town because the allegations contained in AK's Complaint were not covered events due to the contract exclusion in the policy. The Town appeals.

**Standard of Review**

¶7 We review a district court's summary judgment ruling de novo using the same M. R. Civ. P. 56 criteria applied by the district court. *Eastgate Village Water and Sewer v. Davis*, 2008 MT 141, ¶ 18, 343 Mont. 108, ¶ 18, 183 P.3d 873, ¶ 18 (citing *Watkins Trust v. Lacosta*, 2004 MT 144, ¶ 16, 321 Mont. 432, ¶ 16, 92 P.3d 620, ¶ 16). Summary judgment is proper only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Eastgate Village*, ¶ 18. Furthermore, all reasonable inferences which may be drawn from the offered proof must be drawn in favor of the party opposing summary judgment. *Eastgate Village*, ¶ 18. If there is any doubt

3

regarding the propriety of the summary judgment motion, it should be denied. *Eastgate Village*, ¶ 18 (citing *360 Ranch Corp. v. R & D Holding*, 278 Mont. 487, 491, 926 P.2d 260, 262 (1996); *Whitehawk v. Clark*, 238 Mont. 14, 18, 776 P.2d 484, 486-87 (1989)).

¶8　　The interpretation of an insurance policy presents a question of law. *Allstate Ins. Co. v. Wagner-Ellsworth*, 2008 MT 240, ¶ 8, 344 Mont. 445, ¶ 8, 188 P.3d 1042, ¶ 8 (citing *Jacobsen v. Farmers Union Mut. Ins. Co.*, 2004 MT 72, ¶ 9, 320 Mont. 375, ¶ 9, 87 P.3d 995, ¶ 9, *overruled on other grounds by Allstate*, ¶ 13; *Wendell v. State Farm Mut. Auto Ins. Co.*, 1999 MT 17, ¶ 10, 293 Mont. 140, ¶ 10, 974 P.2d 623, ¶ 10). We review a district court's conclusions of law to determine whether those conclusions are correct. *Eastgate Village*, ¶ 19 (citing *Montana Pet. Tank Comp. Bd. v. Crumleys*, 2008 MT 2, ¶ 32, 341 Mont. 33, ¶ 32, 174 P.3d 948, ¶ 32; *State Farm Mut. Auto. Ins. Co. v. Gibson,* 2007 MT 153, ¶ 9, 337 Mont. 509, ¶ 9, 163 P.3d 387, ¶ 9).

**Discussion**

¶9　　*Whether the District Court erred in holding that MMIA did not have a duty to defend and indemnify the Town in an underlying action.*

¶10　　The Town argues that MMIA has a duty to defend and indemnify the Town because AK's Complaint makes assertions which involve risks covered under the policy, i.e., personal injury and public official's errors and omissions. The Town contends that the District Court erred when it relied entirely on the breach of contract exclusion of the policy to deny MMIA's defense and coverage obligations, ignoring AK's actual claims.

¶11　　An insurer's duty to defend its insured arises when a complaint alleges facts which represent a risk covered by the terms of an insurance policy. *Farmers Union Mut. Ins.*

4

*Co. v. Rumph*, 2007 MT 249, ¶ 14, 339 Mont. 251, ¶ 14, 170 P.3d 934, ¶ 14 (citing *Blair v. Mid-Continent Casualty Co.*, 2007 MT 208, ¶ 15, 339 Mont. 8, ¶ 15, 167 P.3d 888, ¶ 15; *Farmers Union Mut. Ins. Co. v. Staples*, 2004 MT 108, ¶ 20, 321 Mont. 99, ¶ 20, 90 P.3d 381, ¶ 20).  An insurer must look to the allegations in the complaint to determine if coverage exists under the policy, thus giving rise to a duty to defend.  *Rumph*, ¶ 14.  Moreover, the insurer must defend "unless there exists an unequivocal demonstration that the claim against the insured does not fall under the policy's coverage."  *Rumph*, ¶ 14.[1]

¶12    The Memorandum of Liability Coverage (Form A) between MMIA and the Town declares that MMIA shall provide coverage to the Town for claims against the Town for bodily injury, personal injury, property damage and public official's errors and omissions.  Section II of Form A states that MMIA's "duty to defend shall arise when the complaint or claim alleges facts which would obligate [MMIA] to indemnify the insured if the alleged facts were proven."

¶13    AK's Complaint against the Town alleges claims of breach of contract, negligent misrepresentation and constructive fraud.   The Town maintains that its policy with MMIA provides coverage for these claims under the personal injury and public official's errors and omissions provisions of the policy.  We will analyze each of AK's claims against the Town in turn to determine whether MMIA has a duty to defend the Town.

*Count One – Breach of Contract*

¶14    The Town alleges that AK's claim for breach of contract does not turn on the

---

[1]  No argument was raised in the case *sub judice* that the insurer must consider facts or information outside the Complaint in order to determine coverage.

terms of the contract, but instead is a claim for negligence. The Town contends that AK's Complaint alleges that the Mayor knew or should have known that the Town was not going to pay for the work performed and that the Mayor should have disclosed this fact to AK in advance. Thus, the Town argues that the Mayor's alleged failure to act when she had a duty to act constitutes negligence and negligence is a claim which MMIA is obligated to defend under the terms of the policy.

¶15 MMIA argues on the other hand that there is no reference in Count One to any "duty," only references to a contract being created and breached. Nevertheless, as MMIA points out in its brief on appeal, breach of contract claims are pled as breaches of duties, i.e., the duties created by each parties' obligations under the contract. "A contract is a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." *Restatement (Second) of Contracts* § 1 (1981).

¶16 In Count One of its Complaint, AK set forth the facts leading up to its claim for breach of contract and specifically stated in ¶ 24 that the Town "has breached its Agreement" with AK. Nowhere in Count One does AK refer to a breach of duty by the Mayor or any other claim that could be considered other than a breach of contract. Section IX.22. of Form A specifically excludes from coverage "[a]ny liability arising out of failure to perform, or breach of, a contractual obligation."

¶17 We have held that "exclusions from coverage will be narrowly and strictly construed because they are contrary to the fundamental protective purpose of an insurance policy." *Swank Enterprises v. All Purpose Services*, 2007 MT 57, ¶ 27, 336

6

Mont. 197, ¶ 27, 154 P.3d 52, ¶ 27 (citing *Deonier & Assoc. v. Paul Revere Life Ins.*, 2000 MT 238, ¶ 45, 301 Mont. 347, ¶ 45, 9 P.3d 622, ¶ 45).

¶18    Here, contrary to being excluded from coverage, the Town argues that this claim falls under the personal injury coverage of the policy.  Personal injury is defined in Section V.O. of Form A as follows:

> "Personal Injury" – means injury, other than Bodily Injury, including but not limited to one or more of the following:
> 1.  False arrest, detention, imprisonment, or malicious prosecution;
> 2.  Wrongful entry or eviction or other invasion of private occupancy;
> 3.  *The publication or utterance of a libel or slander, including disparaging statements concerning the condition, value, quality or use of real or personal property;* or a publication or utterance in violation of the rights of privacy;
> 4.  Unlawful discrimination or violation of civil rights;
> 5.  Shock, fright, mental anguish or mental injury;
> 6.  Assault and battery, committed by, at the discretion of, or with the consent of a COVERED PARTY, for the purpose of protecting persons from injury, death, or property from damage.  [Emphasis added.]

¶19    The Town claims that coverage here falls under subsection 3 of the personal injury provision of the policy regarding the "publication or utterance of a libel or slander."  The Town maintains that in ¶ 20 of its Complaint, AK "contends the Mayor disparaged the quality of AK's personal property used in the project."  Contrary to the Town's assertions, ¶ 20 does no such thing; there is no mention in ¶ 20 of the Complaint of any actions on the part of the Mayor.  Instead, ¶ 20 refers to actions taken by Delta, the project engineer, in setting out items that had yet to be completed by AK under the contract, and items that did not comply with the terms of the contract.  Furthermore, nowhere in the Complaint does AK contend that the Mayor "disparaged" AK's personal property.

7

¶20 Consequently, we hold that defense of this claim is excluded under the breach of contract provision of the Town's policy with MMIA.

*Count Two – Negligent Misrepresentation*

¶21 The Town argues that AK's claim for negligent misrepresentation relies on a claimed misstatement and improper conduct by the Mayor and that the claim is a tort. In support of this proposition, the Town relies on a previous statement of this Court that negligent misrepresentation requires the "intent to induce reliance on a representation without any reasonable ground to believe that it is true. In other words, it requires *negligence* not *intent*." *Tripp v. Jeld-Wen, Inc.*, 2005 MT 121, ¶ 30, 327 Mont. 146, ¶ 30, 112 P.3d 1018, ¶ 30 (emphasis in original).

¶22 Moreover, the Town alleges that this claim falls under the public official's errors and omissions coverage under its policy with MMIA. Public official's errors or omissions is defined in Section V.R. of Form A as follows:

> "Public Officials Errors and Omissions" – means any act, omission, neglect, or breach of duty, including nonfeasance, misfeasance, and malfeasance by the COVERED PARTY in the discharge of their duties with the Entity, but shall not mean or include Bodily Injury, Personal Injury, or Property Damage.

The Town contends that AK's Complaint is "replete with allegations of the Mayor's alleged improper actions, misconduct and failure to act when a duty to act is alleged to have existed."

¶23 According to the Town, this count in AK's Complaint alleges that the Mayor represented that the Town would pay for the work performed when the Town had no intention of paying, and that the Mayor made this representation when she knew or

8

should have known that it was not true. However, no such allegation appears in AK's Complaint. Instead, Count Two was based upon the Mayor's request for work to be done and her offer that the Town would pay for it, a claim that is factually based in contract. Count Two of the Complaint is nothing more than allegations that the contract was modified by the Mayor's request for the work to be done and an actual or implied promise to pay for that work.

¶24 We have repeatedly held that it is the acts giving rise to the complaint which form the basis for coverage, not the complaint's legal theories or conclusory language. *Travelers Cas. v. Ribi Immunochem Research,* 2005 MT 50, ¶ 40, 326 Mont. 174, ¶ 40, 108 P.3d 469, ¶ 40; *Trustees, Missoula Cty. Sch. v. P.E.I.C.,* 263 Mont. 121, 128, 866 P.2d 1118, 1122 (1993); *New Hampshire Ins. Group v. Strecker*, 244 Mont. 478, 482, 798 P.2d 130, 132 (1990).

¶25 The alleged negligent misrepresentations in Count Two of AK's Complaint are the same request for work and offer to pay which created the Town's contract with AK. Thus, the factual basis for Count Two is the Town's contract with AK, and, as such, defense of this claim is excluded under the Town's policy with MMIA.

*Count Three – Constructive Fraud*

¶26 The constructive fraud count in AK's Complaint is only two sentences long. The first sentence incorporates the prior paragraphs of the Complaint by reference, and the second sentence alleges that the "misleading behavior described above constitutes constructive fraud."

¶27 On appeal, the Town maintains that Count Three alleges "misleading behavior" by

the Mayor and that this claim sounds in tort, not contract. However, "misleading behavior" is merely a conclusory phrase. AK simply realleges in Count Three the facts previously pled in its first two counts. Moreover, AK does not set forth any facts in Count Three illustrating what the "misleading behavior" is or how those facts could be considered constructive fraud.

¶28 In Montana, constructive fraud is defined in § 28-2-406, MCA, as:

> (1) any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under him by misleading another to his prejudice or to the prejudice of anyone claiming under him; or
> (2) any such act or omission as the law especially declares to be fraudulent, without respect to actual fraud.

A party asserting a claim of actual fraud must establish the following nine elements to establish a *prima facie* case of actual fraud:

> (1) a representation; (2) the falsity of that representation; (3) the materiality of the representation; (4) the speaker's knowledge of the representation's falsity or ignorance of its truth; (5) the speaker's intent that the representation should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the representation's falsity; (7) the hearer's reliance upon the truth of the representation; (8) the hearer's right to rely upon the representation; and (9) the hearer's consequent and proximate injury or damages caused by their reliance on the representation.

*In re Estate of Kindsfather*, 2005 MT 51, ¶ 17, 326 Mont. 192, ¶ 17, 108 P.3d 487, ¶ 17 (citing *State ex rel. Ins. Fund v. Berg*, 279 Mont. 161, 175, 927 P.2d 975, 983 (1996); *Davis v. Church of Jesus Christ*, 258 Mont. 286, 293, 852 P.2d 640, 644 (1993); *Lee v. Armstrong*, 244 Mont. 289, 293, 798 P.2d 84, 87 (1990)). While a claim of constructive fraud requires similar proof, a plaintiff "need not prove the fifth element relating to intent

to deceive or dishonesty of purpose." *Berg*, 279 Mont. at 175-76, 927 P.2d at 983 (citing *Davis*, 258 Mont. at 293, 852 P.2d at 644; *Lee*, 244 Mont. at 294, 798 P.2d at 88).

¶29     In addition, M. R. Civ. P. 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Here, AK did not state with particularity the circumstances constituting constructive fraud.  As previously noted, the constructive fraud count in AK's Complaint is only two sentences long with the first sentence simply incorporating the prior paragraphs of the Complaint by reference, and the second sentence simply alleging that the "misleading behavior described above constitutes constructive fraud."

¶30     As noted previously in this Opinion, an insurer must look to the allegations in the complaint to determine if coverage exists under the policy, thus giving rise to a duty to defend.  *See* Opinion, ¶ 11 (citing *Rumph*, ¶ 14).  Here, AK's inadequately pled claim of constructive fraud does not give rise to a duty to defend.

¶31     Furthermore, we also stated in this Opinion that constructive fraud requires a breach of duty.  *See* Opinion, ¶ 28 (citing § 28-2-406, MCA).  In this case, the Mayor modified the contract by requesting that additional work be done, thus any duty the Mayor owed to AK arose from the contract.

¶32     Once again, the factual basis for Count Three is the Town's contract with AK and defense of this claim is excluded under the Town's policy with MMIA.

## Conclusion

¶33     Because the claims in AK's Complaint against the Town are all grounded in contract, we hold that the District Court did not err in concluding that MMIA did not

11

have a duty to defend and indemnify the Town based on the breach of contract exclusion in the policy.

¶34    Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ BRIAN MORRIS
/S/ JIM RICE

Justice Patricia O. Cotter dissents.

¶35    I dissent.  I would liberally construe the allegations set forth in AK's Complaint, as *Staples* requires that we do, and remand with directions that MMIA assume the defense of the Town in the underlying action.

¶36    In its Complaint, AK alleges that the Mayor instructed it to perform work beyond the scope of the contract.  I disagree with this Court's conclusion that the allegations against the Mayor are subsumed within the breach of contract case.  For one thing, the Mayor herself was not a party to the contract.  While the Complaint is not a model of draftsmanship, it does clearly assert that AK relied upon the representations of the Mayor to the effect that the Town would pay for the additional work the Mayor requested, and

12

that the Mayor made such representations when the Town had no intention of paying for the extra work. Moreover, AK clearly asserts that it relied upon these representations to its detriment.

¶37 The Court concludes that, notwithstanding the allegations of the Complaint, all of the claims contained therein are actually grounded in contract, and therefore there is no duty to defend. ¶ 33. The Court is too categorical. Although there are clearly breach of contract claims asserted, tort claims are raised as well. In *Garden City Floral Co. v. Hunt*, 126 Mont. 537, 255 P.2d 352 (1953), we noted that "the dividing line between breaches of contract and torts often lies in a twilight zone, where it is difficult to determine whether the case applies strictly to the one or to the other." *Hunt,* 126 Mont. at 543, 255 P.2d at 356. I submit that under such circumstances, until the "dividing line" is clearly identified through discovery, the insurer has the duty to defend the case.

¶38 In *Staples*, we said: "When a court compares allegations of liability advanced in a complaint with policy language to determine whether the insurer's obligation to defend was 'triggered,' a court must liberally construe allegations in the complaint so that all doubts about the meaning of the allegations are resolved in favor of finding that the obligation to defend was activated. Unless there exists an unequivocal demonstration that the claim against an insured does not fall within the insurance policy's coverage, an insurer has a duty to defend." *Staples*, ¶ 22 (internal citations omitted). We further noted that so long as the complaint raises allegations which, if proved, represent a covered risk, the duty to defend is imposed. *Staples*, ¶ 21. In my judgment, the Court here has

wrongly construed the allegations of the Complaint in favor of the insurer so as to prematurely foreclose the duty to defend.

¶39    I would conclude that the Complaint sufficiently alleged facts that, if proven, would represent a covered risk.  I would therefore reverse and remand with instructions that the insurer assume the defense of the underlying action, with a determination to be made later as to whether there is an obligation to indemnify.  I respectfully dissent from our refusal to do so.

/S/ PATRICIA COTTER

Justice W. William Leaphart joins the Dissent of Justice Patricia O. Cotter.

/S/ W. WILLIAM LEAPHART