FILED

04/05/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0273

DA 21-0273

IN THE SUPREME COURT OF THE STATE OF MONTANA

2022 MT 68

R.S. and D.S.,

      Plaintiffs and Appellants,

   v.

UNITED SERVICES AUTOMOBILE
ASSOCIATION,

      Defendant and Appellee.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
                  In and For the County of Yellowstone, Cause No. DV 20-0846
                  Honorable Jessica T. Fehr, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

            Jonathan McDonald, McDonald Law Office, PLLC, Helena, Montana

            John Heenan, Joseph P. Cook, Heenan & Cook, Billings, Montana

      For Appellee:

            David M. McLean, Ryan C. Willmore, McLean & Associates, PLLC,
            Missoula, Montana

                       Submitted on Briefs:  March 16, 2022
                                Decided:  April 5, 2022

Filed:

_____
                          Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 R.S. and D.S. appeal a May 28, 2021 order from the Thirteenth Judicial District Court in Yellowstone County denying their motion for summary judgment and granting summary judgment to United Services Automobile Association (USAA). R.S. and D.S. (Appellants) had filed a complaint alleging USAA violated its duty to defend one of its insured policy-holders, Shawn Conrad, against whom Appellants had obtained a judgment.

¶2 We restate the issue on appeal as follows:

*Did the District Court err in finding that Conrad's insurance policy with USAA created no duty for USAA to defend him against Appellants' claims?*

¶3 We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 R.S. is a minor. At Conrad's home, she took a shower and discovered hidden cameras that Conrad had placed to film her doing so. Her mother, D.S., reported the matter to law enforcement, and the federal government later charged Conrad with child sexual exploitation and possession of child pornography. Conrad pleaded guilty to the latter charge and was incarcerated.

¶5 Appellants subsequently filed a civil case against Conrad. They alleged that Conrad invaded R.S.'s privacy, and they alleged that Conrad negligently or intentionally inflicted emotional distress on both R.S. and D.S. In that proceeding, Appellants secured a $500,000 judgment against Conrad. Conrad lacked assets to satisfy the whole judgment.

¶6 Conrad did have a homeowners insurance policy with United Services Automobile Association (USAA). The policy included some personal liability coverage. In the civil

2

case, Conrad had asked USAA to defend him against the invasion of privacy and emotional distress claims. USAA declined. The insurance company sent Conrad a letter detailing several reasons for the denial. It noted that Conrad's policy described coverage for any "occurrence" that led to "bodily injury." The policy explicitly defined an "occurrence" as "an accident," and the clause defining "bodily injury" stated that it "does not include mental injuries such as[] emotional distress." USAA explained that its denial was based in part on the fact that Conrad's conduct surreptitiously filming the child was intentional—and thus was not an "accident" or "occurrence"—and that the emotional distress claims from Appellants would not count as "bodily injury."

¶7 Furthermore, USAA noted that Conrad's policy contained a sexual misconduct exclusion. This section of the policy excluded personal liability and medical payments coverage for bodily injury "arising out of any actual, alleged, or threatened: (1) sexual misconduct; or (2) sexual harassment; or (3) sexual molestation." USAA noted that this exclusion would also eliminate its duty to defend against injuries alleged in Conrad's case.

¶8 As part of the $500,000 consent judgment, Conrad assigned any claims he might have against USAA to Appellants. Appellants then sued USAA to collect from it on their judgment against Conrad. They alleged that USAA had violated its duty to defend Conrad in the earlier lawsuit. Noting that the facts were not in dispute and the case turned on purely questions of law regarding the duty to defend and the interpretation of USAA's policy, Appellants moved the District Court for summary judgment.

¶9 USAA also moved for summary judgment, citing the same reasons it had provided in its letter denying Conrad's request for a defense. Appellants raised several arguments

3

for why the District Court should find USAA's interpretation incorrect. They asserted that USAA did have a duty to defend because the quoted sections of the policy did not unequivocally demonstrate that Conrad's conduct was beyond the scope of coverage. Appellants argued that since Conrad did not intend for the camera to be discovered, he did not intend their resulting emotional distress, making it an "accident" and thus a covered "occurrence." They noted that their amended complaint described physical symptoms resulting from the emotional distress, which would count as bodily injury. They also argued that it was ambiguous whether the phrase "arising out of sexual misconduct" would apply to Conrad's situation and that considering this ambiguity, USAA had a duty to appear in his defense.

¶10    The District Court analyzed each of these arguments, and it granted summary judgment to USAA, determining that USAA had no duty to defend Conrad because his conduct against Appellants did not fall within the scope of the policy's coverage. R.S. and D.S. appeal.

**STANDARD OF REVIEW**

¶11    We review summary judgment rulings de novo, taking up the district court's task anew and applying the same criteria. *Lucas v. Stevenson*, 2013 MT 15, ¶ 12, 368 Mont. 269, 294 P.3d 377. For summary judgment to be appropriate, there must be no genuine issues of material fact in dispute, and one party must be entitled to judgment as a matter of law. M. R. Civ. P. 56(c)(3).

4

**DISCUSSION**

¶12 *Did the District Court err in finding that Conrad's insurance policy with USAA created no duty for USAA to defend him against Appellants' claims?*

¶13 We conclude that the sexual misconduct exclusion in the policy resolves the question and eliminates the need to address Appellants' other arguments. The clause excluding coverage for claims "arising out of sexual misconduct" is not ambiguous. The presence of this clause in Conrad's policy unequivocally demonstrates that the factual allegations in Appellants' civil case against him would fall within the policy's exclusion, precluding any duty for USAA to defend Conrad.

¶14 Montana law permits parties to an insurance contract to include provisions that exclude certain coverages. *Newbury v. State Farm Fire & Cas. Ins. Co.*, 2008 MT 156, ¶ 36, 343 Mont. 279, 184 P.3d 1021. As long as the exclusion applies to coverage that is not mandatory—like certain motor vehicle liability coverages are—it falls within the discretion of the parties whether to include it. *Newbury*, ¶ 36. Here, the extent of the personal liability coverage in Conrad's homeowners policy with USAA falls within the discretion of the parties to the insurance contract.

¶15 When a legal complaint against an insured alleges facts that would result in coverage if proven true, the insurer has a duty to defend the insured. *Tidyman's Mgmt. Servs. v. Davis*, 2014 MT 205, ¶ 22, 376 Mont. 80, 330 P.3d 1139. This duty is independent of any potential obligation to indemnify the insured, and it can arise when the insurer receives notice that a covered risk is alleged to have occurred, as with Conrad's letter requesting a defense from USAA here. *Tidyman's*, ¶ 22; *Farmers Union Mut. Ins. Co. v. Staples*, 2004

5

MT 108, ¶ 21, 321 Mont. 99, 90 P.3d 381. The duty to defend incurs when coverage under a policy is "potentially implicated," and to avoid the duty, an insurer must provide an "unequivocal demonstration that the claim against the insured does not fall under the policy's coverage." *Tidyman's*, ¶¶ 23, 27 (citing *Staples*, ¶¶ 20-24); *Farmers Union Mut. Ins. Co. v. Rumph*, 2007 MT 249, ¶ 14, 339 Mont. 251, 170 P.3d 934.

¶16 When interpreting an insurance policy, we read the policy as a whole and attempt to give each part its meaning and effect. *Newbury*, ¶ 19. We read the terms and words by giving them their usual meaning and construing them using common sense. *Mitchell v. State Farm Ins. Co.*, 2003 MT 102, ¶ 26, 315 Mont. 281, 68 P.3d 703. "Policy exclusions must be construed narrowly in recognition of the fundamental protective purpose of an insurance policy and the obligation of the insurer to provide a defense." *Tidyman's*, ¶ 23. "If the parties dispute the meaning of a term, we determine whether the term is ambiguous by viewing the policy from the viewpoint of a consumer with average intelligence not trained in the law or insurance business." *Newbury*, ¶ 19 (citing *Montana Petroleum Tank Release Comp. Bd. v. Crumleys, Inc.*, 2008 MT 2, ¶ 34, 341 Mont. 33, 174 P.3d 948).

¶17 Appellants argue that the sexual misconduct exclusion in Conrad's policy does not provide an unequivocal demonstration that their claims are beyond the policy's scope of coverage. First, they contend that it is ambiguous whether hiding cameras in showers is the kind of "sexual misconduct" the clause works to exclude. Second, they argue that the phrase "arising out of" is ambiguous and leaves room for the facts of this case to be covered by the policy.

6

¶18     Appellants' first argument hinges on the fact that USAA did not specifically define "sexual misconduct" in its policy.  They cite to insurance policies that were the subject of litigation in other jurisdictions and that explicitly defined "sexual misconduct" in physical terms or in terms of leading to a "sexual act."[1]  Appellants argue that if some insurers define the exclusion in those ways, while USAA argues for a broad definition that would include secretly videotaping a child, then it must at least be ambiguous.

¶19     Using common sense and giving the words their usual meaning, however, we conclude that what Conrad did was unambiguously "sexual misconduct."  Secretly recording video of a minor showering is creating child pornography—an act unquestionably sexual in nature.  And Conrad was criminally charged for the act, which certainly places it within the ordinary meaning of misconduct.  Furthermore, as USAA points out, Appellants' complaint against Conrad made clear his attempt to obtain the recording in secret, which even in the absence of criminal liability exemplifies his own awareness that what he was doing was transgressive and would be viewed, in ordinary terms, as misconduct if discovered.  Even though USAA used the term "sexual misconduct" in its policy exclusion without further explanation or text narrowing its reach, we can easily conclude that "from the viewpoint of a consumer with average intelligence not trained in the law or insurance business," the phrase unambiguously encompasses an act like Conrad's surreptitious recording.  *Crumleys*, ¶ 34.

---

[1] *See Am. Nat'l Prop. & Cas. Co. v. Rosenschein*, 2020 U.S. Dist. LEXIS 112776, *5 (D. N.M. 2020) (with a policy defining sexual misconduct as "physical or mental harassment or assault of a sexual nature"); *Scottsdale Ins. Co. v. Roumph*, 18 F.Supp.2d 730, 732 (E.D. Mich. 1998) (with a policy defining sexual misconduct as "intended to lead to, or which culminates in a sexual act").

¶20 Appellants' second argument relies on their interpretation of previous cases that have turned on the phrase "arising out of." They note that certain claims might arise out of something other than the excluded conduct. Bill Cosby, for example, had an insurance policy with an exclusion similar to Conrad's. Cosby's insurer nonetheless had a duty to defend him in a civil case in federal court because his victims had alleged injuries from defamatory statements Cosby made about them after they accused him—these injuries did not arise out of Cosby's sexual misconduct but arose out of his other acts that the insurer did not exclude. *See AIG Prop. Cas. Co. v. Cosby*, 892 F.3d 25 (1st Cir. 2018). In another case, which came before this Court, we held that even though an insurance policy excluded claims "arising out of" the use of automobiles and mobile equipment, an insurer had a duty to defend against liability for injuries in a truck wreck because the plaintiffs had alleged it resulted from negligent hiring and supervision—in other words, there was a possibility of liability "arising out of" something other than what was excluded. *See Pablo v. Moore*, 2000 MT 48, ¶ 24, 298 Mont. 393, 995 P.2d 460.

¶21 Appellants contend that we should view their case as raising claims similarly attenuated from any sexual misconduct by Conrad. D.S.'s emotional distress injury, they assert, did not arise out of Conrad's sexual misconduct but instead arose out of learning from her daughter about the misconduct. Appellants' framing, however, twists the ordinary meaning of "arising out of" and does not survive closer scrutiny. For example, the alleged negligent hiring in *Pablo* stood as an independent source of the plaintiffs' injuries. The harm arose out of that act by the insured and reached the plaintiffs through a subsequent wreck that without the negligence in hiring may have been excluded from coverage. The

8

*Cosby* example is similar; the defamatory injuries Cosby's victims claimed did not arise from his sexual misconduct but depended on another independent act, his public statements, as their cause. Here, Conrad's sexual misconduct is the only act alleged from which liability for D.S.'s emotional injury could arise.

¶22 We find no ambiguity regarding whether the USAA policy excluded coverage of Conrad's conduct setting up the recording device. Because the plain meaning of the exclusion was clear, we conclude that Appellants' claims against Conrad were beyond the scope of coverage in USAA's policy. USAA did not have a duty to defend Conrad.

## CONCLUSION

¶23 We affirm the District Court's May 28, 2021 order granting USAA's summary judgment motion by determining that USAA did not violate a duty to defend its insured.


/S/ MIKE McGRATH


We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR
/S/ JIM RICE